**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

LAMONT WHITE,

                                        Plaintiff,

          v.                                                             No. 08-CV-717
                                                                              (FJS/DRH)
J. BERGENSTOCK, Correction Officer, Auburn
Correctional Facility; MR. SENDERSON, Mental
Health Unit, Auburn Correctional Facility; D.
SMITH, Correction Officer, Auburn Correctional
Facility; C. CLARKE, Correction Officer, Auburn
Correctional Facility; T. CLARKE, Correction
Officer, Auburn Correctional Facility; M. STURGEN,
Registered Nurse, Upstate Correctional Facility; S.
WALSH, Registered Nurse; LOUIS TISHENOR,
Physician Assistant, Upstate Correctional Facility; M.
SMITH, Nurse Administrator, Upstate Correctional
Facility; S. DANSON, Correctional Officer, Upstate
Correctional Facility; LUMBARD, Sgt., Upstate
Correctional Facility; R.K. WOODS, Superintendent,
Upstate Correctional Facility; HAROLD GRAHAM,
Superintendent, Auburn Correctional Facility;
RICHARD ROY, Inspector General; and BRIAN
FISCHER, Commissioner,

                                        Defendants.

_____

**APPEARANCES:**                                        **OF COUNSEL:**

LAMONT WHITE
01-A-4083
Plaintiff Pro Se
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

HON. ANDREW M. CUOMO                          ROGER W. KINSEY, ESQ.
Attorney General for the                                 Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se Lamont White ("White"), an inmate currently in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 claiming that the defendants, fifteen DOCS employees, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments.  Presently pending are defendants' motions to dismiss the complaint pursuant to Rule 12(b)(6) for all defendants except, S. Danson,[2] C. Clarke, and T. Clarke.[3]  Docket Nos. 25, 57, 59.[4]  White opposes the motions.  Docket Nos. 55, 64.  For the foregoing reasons, the motions to dismiss should be granted in part and denied in part, and the complaint should be dismissed without prejudice as to Danson.

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2]Danson has never been served with process.  See Docket No. 12 (summons for Danson returned unexecuted by United States Marshals Service).  Under Fed. R. Civ. P. 4(m), service of process must be completed within 120 days of the filing of the complaint.  See also N.D.N.Y.L.R. 4.1(b) (same).  The complaint here was filed on July 3, 2008 (Docket No. 1) and the summonses were issued on July 28, 2008.  Docket no. 6.  Thus, over 120 days have elapsed since either of those events.  Accordingly, pursuant to Rule 4(m), the complaint will be dismissed as to Danson without prejudice.

[3]See note 6 infra.

[4]The first motion was filed before all defendants had been served with process or appeared in the action.  The subsequent motions on behalf of later served defendants are based on the same grounds asserted in the first motion and all three motions will, therefore, be considered together.  See also Docket Nos. 30, 31, 43-46 (other defendants joining in motions).

## I. Background

The facts are related herein in the light most favorable to White as the non-moving party.  See Subsection III(A) infra.

In May 2007, while incarcerated at Auburn Correctional Facility ("Auburn"), defendant Bergenstock, a corrections officer at Auburn, asked White to show his penis in exchange for additional food.  Compl. (Docket No. 1)  ¶ 36.  On June 24, 2007, defendant Senderson, a mental health worker at Auburn, failed to provide medical attention after White informed him of Bergenstock's actions.  Id. ¶ 25-26. Shortly thereafter, White filed a grievance against Bergenstock .  Id. ¶ 26.  On June 20, 2007, defendant D. Smith, another corrections officer at Auburn, filed a false misbehavior report against White in retaliation for grievances White filed against Bergentock.  Id. ¶¶ 26, 37.  White was found guilty of the charge and was sentenced to ninety days in keeplock[5] and loss of certain privileges.  Id. ¶ 26.[6]

On June 25, 2007, White alleges that defendants Graham, Fischer, and Roy[7] were deliberately indifferent to White's health and safety in failing to transfer White to another correctional facility even after White sent letters informing them of Bergenstock's actions.  Coml. ¶ 32.  Roy declined to transfer White even after an investigation was conducted in

_____

[5]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6

[6] White also alleges that defendants C. Clarke and T. Clarke, corrections officers at Auburn, used excessive force against him on November 12, 2007.  Compl. ¶ 27. Defendants have not sought dismissal of this claim.  See Docket Nos. 24, 39 (defendants' answers).

[7]The Auburn Superintendent, DOCS Commissioner, and DOCS Inspector General ("IG") respectively.

August 2007.  Id.  Because defendants failed to remove him from Auburn, White was assaulted on November 12, 2007.  Id. ¶ 32.

It appears that White was transferred to Upstate Correctional Facility ("Upstate") at some time prior to February 29, 2008.  Compl. ¶ 27, 28.  On February 29, 2008, defendant Lumbard, a sergeant at Upstate, moved White from a medical cell to a regular cell, despite White's serious medical condition.[8]  Id. ¶¶ 28, 39.  On March 13, 2008, White slipped and fell in the shower, which resulted in back, neck, and hip injuries.  Id.  White was brought to an outside hospital for treatment.  Id. ¶ 28.  Upon his return on March 17, 2008, defendant Sturgen, a nurse at Upstate, ordered White to remove his neck brace, even though the brace was prescribed for two weeks and he was still in severe pain.  Id. ¶¶ 29, 40.

Two days later, on March 19, 2008, White was scheduled to be examined for these injuries by defendants Walsh, a nurse, and Tishenor, a physician's assistant, at Upstate.  Compl. ¶ 30.  However, because of a prior grievance, White refused to be examined by them due to their alleged deliberate indifference to White's pain and suffering.  Id.  On March 21, 2008, White wrote to Smith asking that he be given pain medication more than once a day and that he be treated by health care workers other than Walsh and Tishenor, whom he was currently having investigated.  Id.  ¶ 31.  Smith refused both requests.  Id. ¶ 42.  On April 18, 2008, defendant Woods, the Upstate Superintendent, rejected White's grievance seeking treatment by different medical personnel.  Id. ¶¶ 33, 44.

This action followed.

---

[8] White claims that he only has one eye and poor vision.  Compl. ¶ 28.

4

## II. Discussion

In his complaint, White asserts in ten causes of action that (1) Smith violated his First Amendment rights by filing a false misbehavior report against him in retaliation for grievances White had filed against Bergenstock; and his his Eighth Amendment rights were violated when (2) he was sexually assaulted, (3) Senderson failed to provide him with mental treatment, (4) Lumbard moved him from a medical cell causing him to slip and fall when exiting the shower, (5) Sturgen prohibited White from using his neck brace when he returned from the hospital, (6) Walsh and Tishenor were deliberately indifferent to White's medical care, (7) Smith refused to provide White with additional pain medication or treatment by alternative medical staff; (8) Woods, Graham, and Fischer failed to transfer White leaving him in a hostile environment; and his Fourteenth Amendment rights were violated when he was found guilty of a false misbehavior report. The moving defendants contend that White's complaint should be dismissed on a variety of grounds.

## A. Legal Standard

Rule 12(b)(6) provides that a cause of action shall be dismissed if a complaint "fails to state a claim upon which relief can be granted." A plaintiff's obligation to provide the grounds for his or her relief requires more than "labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). Factual allegations must suffice to establish a right to relief "above the speculative level" on the assumption that every claim alleged by a plaintiff is true. Id. In other words, a court should "accept as true, the material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Arar v. Ashcroft,

532 F.3d 157, 168 (2d Cir. 2008).

Furthermore, a pro se prisoner's complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond a reasonable doubt that he or she can prove no set of facts in the complaint that would entitle the prisoner to relief.  Maggette v. Dalsheim, 709 F.2d 800, 803 (2d Cir. 1983).  "A court's task in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

As noted by the Second Circuit, the pleadings of pro-se litigants shall be "liberally" construed and should only be dismissed "if it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent the allegations."  Phillips v. Girdich, 408 F.3d 124, 127 (2d Cir. 2005)(quoting Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997)).  A district court should review pro se submissions with "a lenient eye, allowing borderline cases to proceed."  Id. at 107-08 (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998)).  Therefore, when, as here, dismissal or summary judgment is sought against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).

**B. Eighth Amendment**

The Eighth Amendment protects prisoners from cruel and unusual punishment.

Boddie v. Schneider, 105 F.3d at 861.


**1. Sexual Abuse**

It is well settled that the "unnecessary and wanton infliction of pain on a prisoner

constitutes cruel and unusual punishment in violation of the Eighth Amendment." Boddie,

105 F.3d at 861 (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In order to prove a

violation of the Eighth Amendment, a plaintiff must satisfy both an objective and a

subjective inquiry.  See Trammell v. Keane, 388 F.3d 155, 161 (2d Cir. 2003).  A prison

official violates the standards of the Eighth Amendment when (1) the alleged punishment is

"objectively, sufficiently serious" and (2) he or she acted with a "sufficiently culpable state of

mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Because sexual abuse by a prison

official with a culpable state of mind may constitute a violation of contemporary standards of

decency and cause severe harm to the prisoner, such allegations may be cognizable under

the Eighth Amendment.  Boddie, 105 F.3d at 861; see also Farmer, 511 U.S. at 834-35

("[The] rape of one prisoner . . . serves no legitimate penological objective, any more than it

squares with evolving standards of decency.") (internal quotation marks and citations

omitted).

On the other hand, sexual harassment violates the Eighth Amendment only if the harm

is "objectively, sufficiently serious." Boddie, 105 F.3d at 861.  The Second Circuit has held

that a small number of isolated incidents of alleged sexual abuse, including verbal

7

harassment, may not suffice to meet the objective prong of the test or involve a harm of a federal constitutional level.  Id.  Further, a plaintiff must demonstrate that an incident or series of incidents were sufficiently egregious to be "objectively, sufficiently serious" to the point where such actions resulted in the denial of "the minimal civilized measure of life's necessities" and posed a substantial risk of serious harm.  Id.; Trammel, 388 F.3d at 161. The Supreme Court has also held that a plaintiff must prove that a defendant used force "maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1 (1992).

Here, White alleges at most a single, verbal, isolated statement in May 2007 in which Bergenstock told White to display his penis if White wished additional food.  Compl. ¶ 36.  If true, such a statement would, of course, be indefensible of itself.  However, there is no evidence of physical contact, touching, or force.  See Compl.  While a single verbal harassment is "despicable and, if true, . . . may potentially be the basis of state tort actions," it is not "objectively, sufficiently serious" to establish a substantial risk of harm for federal constitutional purposes.  Boddie, 105 F.3d at 861.  Additionally, the Second Circuit has held that allegations of verbal harassment or profanity, without physical  injury or damage, do not state a claim under § 1983.  Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986).  As a matter of law, even viewing the complaint in the light most favorable to White, his claim does not rise to the level of a constitutional violation.  Boddie, 105 F.3d at 861.

Accordingly, defendants' motion should be granted as to this claim.


## 2. Medical Treatment

The Eighth Amendment prohibition against cruel and unusual punishment encompasses

8

the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). To succeed on a §1983 claim under the Eighth Amendment, a prisoner must establish that the defendants acted with deliberate indifference to a serious illness or injury, "resulting in the infliction of unnecessary pain and suffering." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)).  Further, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

New York State has a constitutional obligation to provide adequate medical care to prisoners.  See Estelle, 429 U.S. at 103-04.  " 'Because society does not expect that prisoners will have unqualified access to health care,' a prisoner must first make [a] threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." Smith, 316 F.3d at 184 (quoting Hudson v. McMillian, 503 U.S. 1,9 (1992).  Courts have determined that a serious illness or injury exists where "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)(quoting Gutierrez v. Peters, 111 F.3d 1364, 1373   (7th Cir. 1997)).  Factors in determining a serious medical condition include, but are not limited to, the existence of an illness or injury that (1) a reasonable doctor or patient would find worthy of treatment or (2) significantly affects the daily activities of the prisoner.  Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).  Further, in order to establish Eighth Amendment liability, a plaintiff must establish more than "'an inadvertent failure to provide adequate

medical care.'" Id.(quoting Estelle, 429 U.S. at 105-06).

Deliberate indifference to a prisoner's serious medical needs may constitute a violation of the Eighth Amendment.  West v. Atkins, 487 U.S. 42, 48 (1988) (citing Estelle, 429 U.S. 97).  Deliberate indifference requires the plaintiff to prove that the prison official "knew of and disregarded an excessive risk to inmate health or safety."  Chance, 143 F.3d at 703 (citing Farmer, 511 U.S. at 837).  Adequate grounds for deliberate indifference under a § 1983 claim, may be manifested by a prison doctor's response to an inmate's needs. Estelle, 429 U.S. at 104.  It may also be shown by a corrections officer denying or delaying an inmate's access to medical care or by intentionally interfering with an inmate's treatment. Id. at 104-05.

However, a claim may be dismissed if there is no evidence that a prison official acted with deliberate indifference to a serious medical need.  See West, 487 U.S. at 46.  As long as the treatment is adequate, mere disagreement with the proscribed course of treatment does not give rise to a constitutional claim.  Chance, 143 F.3d at 703.  Additionally, an inmate does not have the right to a physician of his or her choosing.  See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986).  It is well settled that "[p]rison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates [and] courts have repeatedly held that a prisoner does not have the right to the treatment of his choice."  Ross v. Kelly, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992).

### a. Lumbard

Here, Lumbard maintains that he was not deliberately indifferent to White's medical needs by removing him from a medical cell even though White only had the use of one eye.

Compl. ¶ 39.  White contends that had he not been forced to change cells, he would not have slipped and fell while showering.  Id.  Even construing the facts in the light most favorable to White, he fails to demonstrate that Lumbard was deliberately indifferent to his medical needs by moving him to another cell.  Id. ¶ 28.  There is no sufficient allegation that the cell change constituted a contributing factor in the slip-and-fall in the shower two weeks later or that Lumbard was on notice that White was at risk of falling in that shower. Deliberate indifference requires that "the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."  Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).  White alleges no facts to prove that this was a deliberate action.  White must allege more than an inadvertent and unforeseeable accident.  Estelle, 429 U.S. at 105-06. Accordingly, defendants' motion as to Lumbard on this claim should be granted.

### b. Sturgen

Sturgen contends that White has failed sufficiently to allege that she acted with deliberate indifference when she removed White's neck brace and denied him additional pain medication.  Compl. ¶ 40.  White contends that upon return to Upstate, he was "ordered . . . to remove the neck brace," despite his complaints of severe pain.  Compl. ¶ 29.  White's mere disagreement with Sturgen over proper treatment does not implicate an Eighth Amendment claim.  .  Chance, 143 F.3d at 703.  Viewing the facts in the light most favorable to White, though, it appears that Sturgen knew of White's increased level of pain following his return from the hospital where he had just received treatment for a head and neck injury and that she disregarded that pain.  The alleged statements that she "doesn't

11

care about {White's] pain and suffering" elevate this claim from unactionable negligence to potential deliberate indifference.  Compl. ¶ 29; <u>Chance</u>, 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."). Accordingly, defendants' motion as to Sturgen should be denied.

### c. Walsh, Tishenor, and M. Smith

Lastly, Walsh, Tishenor, and M. Smith are alleged to have been deliberately indifferent because they did not provide White with treatment by alternative medical staff.  Compl. ¶ 30-31[9].  White admits that these defendants attempted to treat him, but he rejected their treatment due to a prior grievance. <u>Id.</u> ¶ 30.  Because an inmate has no right to a physician of his or her choosing, all claims against Walsh, Tishenor, and M. Smith should be dismissed as White has failed to allege any facts supporting a constitutional claim.  <u>See</u> <u>Dean</u>, 804 F.2d at 215.

### d. Senderson

White alleges that Senderson, a mental health social worker at Auburn, exhibited deliberate indifference to White's medical needs in that on or about June 24, 2007, after White advised Senderson of the alleged incident with Bergenstock, Senderson failed to provide White with mental health treatment.  Complaint ¶¶ 25-26. White has failed to

---

[9] White also contends that M. Smith failed to order pain medication.  Compl. ¶ 42. Defendants have not addressed this allegation.  However, White has failed to allege any facts establishing a serious medical need requiring pain medication and it appears, therefore, that the objective prong of the Eighth Amendment analysis has not been satisfied. Accordingly, this claim as well should be dismissed.

demonstrate that the condition which he contends should have been treated by Senderson was sufficiently serious or denied him the minimal civilized life necessities. Farmer, 511 U.S. at 834. White has also failed to plead "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66.  At most, White alleges that White and Senderson differed over whether White required mental health treatment after the alleged single incident with Bergenstock.  As noted above, a mere difference of opinion over the need for or appropriate course of treatment fails to meet the requirement for sustaining an Eighth Amendment claim.  Accordingly, defendants' motion as to Senderson should be granted.


### C. Due Process

   The Due Process Clause of the Fourteenth Amendment contains both substantive and procedural components. Zinernon v. Burch, 494 U.S. 113, 125 (1990).  The procedural component bars the "deprivation by state action of a constitutionally protected interest. . .without due process of law." Id. at 125-26.  "[A]n inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property." Vega v. Artus, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (citing Perry v. McDonald,  280 F.3d 159, 173 (2d Cir. 2001)).  Once a protected liberty interest has been established, a court must determine whether "the government deprived the plaintiff of that interest without due process." Perry, 280 F.3d at 173 (quoting Narumanchi v. Bd. of Trs. of the Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988)).  To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the deprivation was

atypical and significant in relation to ordinary prison life.  Id. at 484; Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir.1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir.1996).

The Second Circuit has also emphasized that the "atypical" standard under Sandin entails a consideration of both duration of confinement as well as an examination of the conditions of that confinement.  Ortiz v. McBride, 323 F.3d 191, 195 (2d Cir. 2003).  The Second Circuit has noted that where the period of confinement exceeds thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin.  Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).  Thus, as White spent ninety days in keeplock, questions of fact exist as to the liberty interest asserted by White.

However, despite White's allegation of a due process violation, his claim still runs afoul of the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477, 487-87 (1994).  That rule provides that if a determination favorable to the plaintiff in a § 1983 action "would necessarily imply the invalidity of his conviction or sentence," a plaintiff must prove that the conviction or sentence has been reversed on direct appeal or declared invalid in order to recover damages under § 1983.  This rule apples to challenges to procedures used in prison disciplinary proceedings.  Edwards. v. Balisok, 520 U.S. 641 (1997).  There is no evidence that White's disciplinary determination was ever vacated.  Therefore, because White's recovery of damages here for a false misbehavior report would necessarily imply the invalidity of the disciplinary conviction, the claim here cannot stand.

Accordingly, defendants' motion should be granted as to this claim.


**D. Retaliation**

White alleges that D. Smith filed the false misbehavior report against him in retaliation

14

for White's grievance regarding the Bergenstock incident.   Smith moves to dismiss this

claim.   To state an actionable claim for retaliation, a plaintiff must first allege that the

plaintiff's conduct was constitutionally protected and that this protected conduct was a

substantial factor that caused the adverse action against plaintiff. Graham v. Henderson, 89

F.3d 75, 79 (2d Cir.1996). "Under this analysis, adverse action taken for both proper and

improper reasons may be upheld if the action would have been taken based on the proper

reasons alone." Jackson v. Onondaga County, 549 F.Supp.2d 204, 215 (N.D.N.Y.2008)

(citing Graham, 89 F.3d at 79). Additionally, courts must view retaliation claims with care

and skepticism to avoid judicial intrusion into prison administration matters. Id. Conclusory

allegations alone are insufficient. Id. (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d

Cir.1983) (explaining that "claim[s] supported by specific and detailed factual allegations ...

ought usually be pursued with full discovery.")).

   Here, White's claims that D. Smith issued the misbehavior report in retaliation for

White's grievances are wholly conclusory with no plausible nexus between the grievance

and the misbehavior report other than White's suggested conclusion.   Moreover, for the

reasons discussed in the preceding subsection, White's conviction on the charges in the

misbehavior report have never been overturned and, therefore, there is no sufficient

allegation that the misbehavior report was false in any material respect.   Thus, defendants'

motion should be granted as to this claim as well.


### E. Personal Involvement

   It is well settled in the Second Circuit that "personal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).  A plaintiff must allege that individual defendants were personally involved in an alleged deprivation of a constitutional violation, Since respondeat superior does not apply to § 1983 actions.  Thomas v. Ashcroft, 479 F.3d 491, 496 (2d Cir. 2006).  A defendant cannot be held liable under § 1983 for holding a supervisory position.  Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).  However, a supervisory official may be shown to be personally involved if he or she: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring.  Thomas, 479 F.3d at 496-97 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  As defined by the Second Circuit, direct involvement is the "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."  Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001).  In the absence of such involvement, a defendant should not be held liable.  See Rizzo v. Goode, 423 U.S. 362 (1976).

The receipt of letters complaining of alleged constitutional violations will not suffice to establish personal involvement.  See Sealey v. Gitner, 116 F.3d 47, 51 (2d Cir. 1997).[10] Further, the fact that an official failed to investigate a letter alleging a constitutional violation is insufficient to establish  personal involvement.  Westbrook v. City Univ. of N.Y., 591 F.

---

[10]Senderson also moves to dismiss any claim against him based on the alleged Bergenstock incident.  See Senderson Mem. of Law (Docket No. 57-2) at 7-8.  to the extent that White asserts that Sensderson was involved in that alleged incident because White reported it to him, that allegation fails to state a claim.

Supp. 2d 207, 225 (E.D.N.Y. 2008).  "The same is true if the only involvement of the

supervisory official is to refer the inmate's complaint to the appropriate staff for

investigation."  Vega v. Artus, 610 F.Supp.2d 185, 198 (N.D.N.Y. 2009) (citing Ortiz-

Rodriquez v. N.Y. State Dep't of Corr. Servs., 491 F  Supp. 2d 342, 347 (W.D.N.Y. 2007))).

Additionally, inmates do not have a right to be housed in a facility of their choosing, so

White's allegations that Graham, Fischer, and Roy displayed personal involvement by

refusing to transfer him to another facility are not cognizable constitutional claims.

Montanye v. Haynes, 427 U.S. 236, 242-43 (1976).  In fact, the complaint indicates that

White was given the relief he sought as he was transferred from Auburn to Upstate after

November 12, 2007.  Compl. ¶ 27-28.  Furthermore, the receipt of letters complaining of

alleged constitutional violations does not establish the requisite personal involvement.  See

Sealey, 116 F.3d at 51.

Lastly, White has failed to establish sufficient personal involvement under § 1983, when

he alleges that Woods denied him access to alternative medical personnel.  See Dean, 804

F.2d at 215.  An inmate has no constitutional right to a physician of choice.  Id.  Therefore,

White has not demonstrated that Woods was personally involved in depriving him of a

constitutionally protected right.  Further, prison superintendents cannot be held liable simply

because of a response to a grievance.  See Sealey, 116 F.3d at 51.

Accordingly, defendants' motion on these grounds should be granted as to Graham,

Fischer, Roy, Woods, and Senderson.


### F. Qualified Immunity

Qualified immunity protects government officials from civil liability when acting within the

scope of their discretionary functions.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The

doctrine of qualified immunity also "serves to protect government officials from the burdens

of costly, but insubstantial lawsuits."  Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999)

(citing Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995)).  Unless the plaintiff fulfills his

burden of showing that the officer violated "clearly established statutory or constitutional

rights of which a reasonable person would have known," the complaint should be

dismissed.  Id. at 815; see also Brown v. State, 814 N.Y.S.2d 492, 506 (2006).

   Defendants are entitled to qualified immunity if (1) the defendant did not violate clearly

established right or (2) defendant's belief that his or her actions did not violate clearly

established law was objectively reasonable.  Johnson v. Newburgh Enlarged Sch. Dist., 239

F.3d 246, 250 (2d Cir. 2001).  "A right is clearly established if (1) the law is defined with

reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right,

and (3) a reasonable defendant [would] have understood from the existing law that [his]

conduct was unlawful."  Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (citing

Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)).  In determining whether

public officials are entitled to qualified immunity, the court should ask what a "reasonable

person in the defendant's position should know about the constitutionality of the conduct."

Id. (quoting McCullough v. Wyandanch Union Free Sch., 187 F.3d 272, 278 (2d Cir. 1999)).

   If a plaintiff's allegations are accepted as true, a court must first determine whether there

was a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only then does a

court proceed to determine whether the constitutional rights, of which a reasonable person

would have known, were clearly established at the time.  Aiken v. Nixon, 236 F. Supp. 2d

211, 230 (N.D.N.Y. 2002), aff'd, 80 Fed. Appx, 146 (2d Cir. Nov. 10, 2003).  Additionally, a

claim based on qualified immunity may be dismissed without first determining the substantive claims of the case.  See Home v Coughlin, 191 F.3d 244, 247-50 (2d Cir. 1999).

As White has failed to allege a constitutional violation for all claims except his Eighth Amendment claim against Sturgen for removing his neck brace, the actions of the other defendants need not be discussed because White has failed to plead facts sufficient to establish the first prong of the analysis.  With respect to Sturgen, it was clear that the Eighth Amendment protected inmates from deliberate indifference to their serious medical needs. Thus, the allegations of the complaint suffice to raise a question of fact whether Sturgen is entitled to qualified immunity.

Therefore, all moving defendants other than Sturgen are entitled to qualified immunity and, in the alternative, all monetary claims against them in their individual capacities should be dismissed.

**G. Eleventh Amendment**

Under the Eleventh Amendment to the United States Constitution, "no suit is maintainable against the state either in its own courts or in the courts of a sister state, by its own citizens, by the citizens of another state, or by the citizens or subjects of a foreign state."  U.S. CONST. amend. XI.  Under this amendment, the doctrine of sovereign immunity is set forth.  Id.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v.

19

Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover . . . damages . . . in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

In his complaint, White referrs to all defendants by their official titles.  Compl.  However, in his response papers, White states that it was his intention to sue all defendants in both their individual and official capacities.  Docket No. 55 at ¶ 17.  By suing defendants in their official capacities, White acknowledges that defendants were state officials acting in their official capacities and were, therefore, agents of the state. Additionally, because state officials can only be sued for injunctive or prospective[11] relief, and White is suing for retrospective relief only, his claims are barred under the Eleventh Amendment as an action against the state.  Therefore, White's claims for monetary relief against the defendants in

---

[11]Prospective relief is a narrow exception to the Eleventh Amendment. Actions for prospective relief are not treated as actions against the state.  Kentucky v. Graham, 473 U.S. 159, 167 fn. 14 (1985).

their official capacities are barred by the Eleventh Amendment and defendants' motion on this ground should be granted.

### H. State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), where a district court has dismissed all federal claims in a complaint over which it has original jurisdiction, the court may decline to exercise jurisdiction over state law claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  Section 1367 provides in part:

> **(a)** Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> **(c)** The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...
>
> > **(3)** the district court has dismissed all claims over which it has original jurisdiction.

"[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience, and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." Castellano v. Bd. of Trs. Police Officers' Variable Supplements Fund, 937 F.2d 752, 758 (2d Cir. 1991) (quoting United Mine Workers, 383 U.S. at 726)).  Furthermore, a district court ought not "reach out for ... issues, thereby depriving state courts of opportunities to develop and apply state law."  Mayer v. Oil Field Systems Corp., 803 F.2d 749, 757 (2d Cir.

1986).

Here, if the recommendations herein are adopted by the district court, the federal claims against all moving defendants except Sturgen, C. Clarke, and T. Clarke will be dismissed. Both because the underlying allegations fail to state claims for the reasons discussed above for the federal claims and for the reasons underlying § 1367(c)(3), the pendent state law claims against all moving defendants except Sturgen, C. Clarke, and T. Clarke should be dismissed, but defendants' motion to dismiss the pendent state law claims against Sturgen, C. Clarke, and T. Clarke should be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1. The motions of the moving defendants to dismiss (Docket Nos. 25, 57, 59) be:

A. **GRANTED** as to all claims against all defendants except Danson, Sturgen, C. Clarke, and T. Clarke and the complaint should be **DISMISSED** as to all defendants except Danson, Sturgen, C. Clarke, and T. Clarke;

B. **DENIED** as to the Eighth Amendment and any pendent state law claims against Sturgen regarding the removal of the neck brace;[12] and

2. The complaint should be **DISMISSED** without prejudice as to all claims against Danson in accordance with Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).

---

[12]See also note 6 supra regarding the remaining claims against C. Clarke and T. Clarke.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  October 23, 2009
      Albany, New York

_____
David R. Homer
U.S. Magistrate Judge

23